DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

JUNE TERM, 1894.

LINO MARTINEZ, PLAINTIFF IN ERROR, v. WILLIAM RUN-
KLE ET AL., ADMINISTRATORS OF THE ESTATE OF
DANIEL RUNKLE, DECEASED, DEFENDANTS IN ERROR.

WILLIAM RUNKLE ET AL., ADMINISTRATORS OF THE
ESTATE OF DANIEL RUNKLE, DECEASED, PLAINTIFFS
IN ERROR, v. LINO MARTINEZ, DEFENDANT IN ERROR.

1. Where the declaration alleges the breach of an express contract for
certain service at a stipulated price, and does not contain a *quantum
meruit* count, it is error for the trial justice to instruct the jury that
the plaintiff may recover what his service was reasonably worth.
2. Where, in the course of a trial, that which works an estoppel *in pais*,
the effect of which is to defeat the plaintiff's recovery, clearly appears,
it is the duty of the court, upon request, to instruct the jury to find
for the defendants.

On error to the Supreme Court.

The declaration is upon a contract, under seal, entered into
between Daniel Runkle, now deceased, and Lino Martinez,

111

on the 2d day of November, 1881, and demands damages for the breach thereof.

It is recited in the contract that the city of Havana, in the island of Cuba, was, at the date of the agreement, desirous of constructing, or having constructed, water works to supply its inhabitants with water; that it was supposed that the city would issue its bonds to the amount of $5,600,000 for that and other purposes connected therewith, and pay $2,200,000, in lawful money of the United States, out of the moneys realized from the sale of its bonds, to the person or persons to whom the contract for the construction of the water works should be awarded, and by it Mr. Runkle agreed that, in case the contract for the erection and construction of the water works contemplated should be awarded to him or to parties that he might name, or to parties in his interest, he would pay Martinez, out of the moneys paid to him, Runkle, or to the person or persons named by him, or in his interest, by the city of Havana, on account of the work, the sum of $175,000, or, if the contract should be awarded at a price less than $2,200,000, a smaller sum, the ascertainment of which was provided for, and also one-eighth of the net profits which might arise from work not within the contract, which might be done in connection with the water works. Upon his part, Martinez agreed that he would proceed to Havana, without delay, at his own expense, and there, as the representative of Runkle, use all lawful means and give all the time necessary to obtain the contract for Runkle or for persons named by him or in his interest.

The declaration avers that Martinez did proceed to Havana, according to the requirements of the agreement thus made, and did procure the contract for the erection and construction of the water works for Runkle and Edward C. Maddison, Walter H. Gilson and James H. Lyles, persons named by Runkle, and in his interest, at the sum of $2,200,000; that thereafter Runkle failed and neglected to carry out that contract, so that he forfeited all rights thereunder, and that, on the 4th of August, 1884, Runkle requested and procured a

cancellation of the contract for the purpose and with the efficacy of exonerating himself from the losses and liabilities he incurred to the city of Havana by his failure and neglect to carry out his agreement with it and obligations thereunder, and that thereby he put it out of his power to receive the $2,200,000, out of which he was to pay Martinez the $175,000, and thus committed a breach of the contract sued upon.

To this declaration Runkle pleaded, among other things, that Martinez did not procure the contract which he agreed to procure; that he, Runkle, did not fail to carry out such a contract as he stipulated for with the city of Havana, and did not request or procure a cancellation of such a contract; that he was ready to carry out the contract to build the contemplated water works, but the contract procured by Martinez, which, among other things, included that work, was, by consent of all parties concerned in it, including Martinez, cancelèd; that he, Runkle, did not, by any act or omission of his own, put it out of his power to receive the $2,200,000 under the contract that Martinez procured from the city.

Upon the trial of the issues joined, there were introduced in evidence, upon the part of the plaintiff, Martinez, the contract sued upon; also an advertisement by the municipal council of the city of Havana of a sale, on the 28th of March, 1882, of a loan of $5,600,000 to that city for bonds of the city to be thereafter issued. The conditions of the sale, having incorporated with them that which is called "fundamental provisions" of the loan and a general statement of the work required in the construction of the water works, among other things declared that each bidder should deposit $64,000 as a guarantee that he would abide the result of the sale; that the proposals of bidders should state either that the bidder would make the loan in cash, to be applied by the city to the purposes for which it was to be raised, or that he would make the loan and apply it himself, undertaking to build the water works for the amount estimated at his own cost; that the purposes of the loan were:

1. To pay a credit of the Spanish Bank of
   Havana, with some interest.................$3,272,982 85
2. To pay the estimated cost of the works and
   storage and distribution of water and that
   of the additional works relating to the
   latter and approved as extraordinary...... 2,199,144 00
3. To pay the costs and taxes incurred by the
   constitution of the mortgage, of issuing
   the bonds and unforeseen and eventual
   expenses of legalization, drawings, &c....   127,873 15
                                          ─────────────
                                            $5,600,000 00

and that the basis of bidding should be the bonds of the city
at eighty per cent. of their face or par value; also, a docu-
ment which is styled the award of the municipal council of
Havana, and is dated April 5th, 1882, in the form of a cer-
tificate by the secretary of the council of the municipality,
under direction of the mayor and under the seal of his office,
among other things reciting that two proposals were made at
the sale, one by Don Emeterio Zorrilla, who offered to take
the loan for his own account at the rate of eighty-one and
one sixty-fourth per cent., he to apply that sum to the pur-
poses set forth in the conditions of loan and construct the
water works according to the estimate, &c., upon condition
that he should have the management of certain property and
revenues to be pledged for the security of the loan ; the other
by Don Lino Martinez, in behalf of " E. C. Maddison of
London and Walter H. Gilson in his own right and as repre-
senting Messrs. Daniel Runkle and James H. Lyles of New
York," who offered to take the loan for the account of the
persons indicated, at the rate of eighty-one and one thirty-
fifth per cent., in one sum, in pounds sterling, those persons
to apply the sum to the purposes set forth in the conditions
and to construct the water works according to the estimates,
&c. ; that the proposal of Martinez was adopted and ratified
by one Overmann, as attorney for Maddison, and by Walter
H. Gilson, as attorney for himself and Messrs. Runkle and

Lyles; that the proposal of Zorrilla was rejected because of the condition which he attached to it, and the loan was awarded to Martinez, who took the oath required by law and accepted the "award of the loan" on behalf of Maddison, Gilson, Runkle and Lyles, undertaking for his principals well and faithfully to perform under the guarantee of deposit he had made; that the municipal council, by its resolution, approved the award of the loan to the individuals represented by Martinez, to wit, Overmann representing Maddison, and Gilson representing himself, Runkle and Lyles; also, that the powers of attorney held by Overmann and Gilson from their principals were examined and found to be sufficient in form.

The plaintiff also offered in evidence an agreement made on the 15th of April, 1882, between Maddison & Company, by Overmann, their attorney, of the first part; Gilson, of the second part; Lyles, of the third part, and Runkle, of the fourth part, which recites that the parties had contracted to lend the city of Havana $5,600,000 and construct water works, and had agreed between themselves to sever their enterprise so that Maddison & Company should alone make or procure the loan, and the other parties should not be responsible in that behalf, and so that Gilson, Lyles and Runkle should alone build the water works, and Maddison & Company should be in nowise responsible therefor, and that the parties had taken contracts from the city of Havana accordingly, and provides that Maddison & Company will procure the loan according to their contract and indemnify the other parties from all obligations in respect thereof; that the other parties will construct the water works according to their contract and save Maddison & Company harmless in respect thereof; that Maddison & Company will pay the others $2,200,000 for building the water works, as the work progresses according to the contract's requirements; that Lyles and Runkle thereby ratify every act theretofore done for them by Gilson, concerning the dealings had with the city of Havana, touching the matters in question; that the agree-

ment was to bind the successors, heirs, executors, administra-- tors and *assigns* of the respective parties.

There were offered in evidence four powers of attorney, the *first,* dated on the 6th day of March, 1884, by Runkle and Lyles to Martinez, authorizing him to take measures for them to "withdraw, suspend and cancel the adjudication of said loan, together with all the incidents thereof in due form;" the *second,* dated on the 26th day of June, 1884, by Gilson to Jose Manuel Mestre, which recites that Gilson is assignee of the interest of Maddison, and authorizes Mestre, for him, in his right as an original contractor and also as assignee of Maddison, to take such proceedings as may be necessary to rescind and cancel the contract for loan and construction of the water works, and to collect the share of the $64,000 deposit which properly belonged to him; the *third,* dated on the 24th day of July, 1884, made by Runkle and Lyles to Martinez and Mestre, ratifying the power theretofore given to rescind the contract aforesaid and giving more ample power to accomplish the same end; the *fourth,* dated on the 25th of July, 1884, and made by Gilson to Mestre and Martinez, conferring the same powers as to him that were conferred by Runkle and Lyles in their second power of attorney.

The plaintiff also offered in evidence an agreement between Martinez, of the one part, and Gilson, for himself and Runkle and Lyles, of the other part, dated on the 27th of March, 1882, which, in effect, guaranteed to Martinez the return of the $64,000 deposit made with his proposal, and assigned to Martinez $25,000 out of the moneys which might be had for building the water works by certain percentage as they should be paid.

Next, the plaintiff offered a document, dated August 4th, 1884, which was in the form of a certificate by the secretary of the municipal council of Havana, reciting that Martinez and Mestre had exhibited their powers of attorney from Runkle, Gilson and Lyles, and, the powers proving sufficient, that the contract of March, 1882, with the city of Havana, was duly rescinded and the $64,000 deposit was restored to

Martinez and Mestre, in pursuance of authority from the municipal corporation, so that all parties are free from the obligation of the contract rescinded.

Upon offering these documents, without further evidence, the plaintiff rested.   Thereupon the defendants moved that the plaintiff be called upon these grounds :

*First.* That the contract obtained by Martinez was not the contract contemplated in the agreement sued upon.

*Second.* That the plaintiff is estopped from asserting any right in this action by reason of the rescission which he procured to be made.

The court denied the motion, and, upon such denial, error is, among other things, assigned.

The defendants then offered in evidence—*First.* A letter by Martinez to the mayor of Havana, in November, 1881, seeking instruction whether the proposed loan to the city could be negotiated for privately or must be awarded through public bidding.   *Second.* A letter from Martinez to Runkle, in February, 1882, in which Martinez asks Runkle to advance the $64,000 necessary to deposit to secure the contract of loan and deplores the possible loss of the contract if Runkle shall fail to respond affirmatively to his demand.   *Third.* A letter from Martinez to Jose M. L. Mestre, one of the lawyers of Runkle, enclosing a newspaper in which were published the bases of the proposed loan by the city of Havana.   *Fourth.* A translation of the Spanish duplicate agreement of severance of the contract of loan.   This Spanish agreement is between Overmann, the representative of Maddison & Company, and Gilson, for himself and as the representative of Runkle and Lyles.   It is dated March 29th, 1882, and recites that the parties have undertaken conjointly to make the loan of $5,600,000, and have agreed, in the determination of their respective rights and obligations, that, notwithstanding the obligations of Gilson, Runkle and Lyles to the municipality of Havana, the loan is to be for the exclusive and sole account of Maddison & Company, and that Gilson, Runkle and Lyles shall not be responsible for its production, and that Maddison

& Company shall respond to Gilson, Runkle and Lyles for all damages because of failure by them to execute the contract of loan; also that Gilson, Runkle and Lyles shall be contractors for the erection of the water works, at the price of $2,200,000, which sum Maddison will pay to them, and that Gilson, Runkle and Lyles will pay to Maddison & Company, any damage which the latter may sustain by any failure in the former to carry out the part of the contract which relates to the construction of the water works, and in the document Gilson declares that the stipulation above stated was agreed upon before the proposal for the loan to the municipality was made. *Fifth.* An agreement dated November 11th, 1882, between Gilson and Martinez, reciting the contract of loan with the city of Havana and the transfer of the loan part of it to Maddison, and the fact that Maddison had transferred such loan part to Gilson, who thereby became solely entitled to the rights and interests of the contractors in the loan, and that Martinez was agent in procuring the contract, and providing that Martinez should be the financial agent of Gilson at Havana, so far as relates to the loan, upon terms and limitations defined. *Sixth.* Another agreement of the same date as that last mentioned, between the same parties, touching a division of the profits from the loan. *Seventh.* A letter from Martinez to one Gordon, at London, dated September 10th, 1883, suggesting a scheme by which the impatience of the authorities of Havana at the long delay in the production of the loan might be quieted. *Eighth.* A letter from Martinez to Lyles, dated March 8th, 1884, in which Martinez writes:

"Your favor of the 1st inst. came duly to hand, in which you announce, by next mail, the remittance of the power to rescind the contract.

"You speak in that letter of a current report of my being in negotiations with the Spanish Bank, and I must tell you in reply that if it were possible for me to do such a thing, I would gladly offer you a share of the benefits, but unfortunately it is not so. The impossibilities to do the business.

under the present circumstances, are quite out of question. No one can do it at present, not even the Spanish Bank, but in case they should undertake it they will not need or have any of us. I am well aware of it, for I have offered the business to them twice and they have refused it. What would I get by another trial? Another refusal only.

"Up to the present time I know not whether Mr. Gilson sends the power or not, and I beg you to do your best and ask Mr. Runkle to use his influence with Mr. Gilson, so as to get this document from him.

"He must know by this time that there is no hope to save the business, and that it is of the greatest impossibility to do it even with the money on hand."

*Ninth.* A letter, dated March 27th, 1884, from Martinez to Emmett R. Olcott, of New York, one of the firm of lawyers known as Olcott & Mestre, employed by Runkle—Olcott managing the New York office of the firm, and Mestre managing the Cuban office—which is as follows:

"Having been informed by the letters of Messrs. Runkle, Lyles & Gilson that you are the lawyer who took part in the drawing up of the powers of attorney for the rescission of the contract for the municipal loan in this city, I have not hesitated to apply to you to-day by cable to ask you to inform those gentlemen of the necessity I am in of having those documents in order to save the deposit of $64,000 (sixty-four thousand dollars, gold) that I made to make the proposals to such loan, and that was guaranteed by contract of March 27, 1882.

"Mr. Mestre, to whom the powers of attorney of Mr. Runkle & Lyles have been forwarded, has asked me for a letter declaring that I do not propose to avail myself of the rescission of any right to my own advantage, and also that I release the contractors from all liability therein, and I have not had any question in telling it to him, since I have not to their prejudice any plan, project or idea of other business negotiations. I send you herewith a copy of that letter.

"This is a copy of the telegram:

" '*Runkle, Lyles, Gilson, care Olcott:*
        " ' 35 *Broadway, New York.*
    " ' Urge forwarding, pending powers, I protest damages delay.
                                    " ' MARTINEZ.'

" I have done in this matter all that it has been possible for me to avoid damages and claims, but if I do not have the powers I have asked for in time, that is, of all contractors, I will find myself in the unfortunate, but necessary, position of enforcing my rights.

" I hope that your valuable information will avoid all difficulties and make a happy ending to an incident, the settlement of which without doubt is legal as well as proper."

*Tenth.* A letter from Martinez to Mestre, also dated March 27th, 1884, as follows:

" In accordance with your wishes, in order to satisfy the persons represented by you in the matter of the municipal loan of this city, I have the greatest pleasure in addressing this to you, wherein I declare that I have no purpose in concurring in representing them in the rescission of the contract for the loan to utilize any rights, nor to obtain any advantages of this rescission hereafter, on account of any other negotiations in view leading to such course, nor do I have consequently any idea to carry out to the injury of the present contractors, and no other desire moves me than that of saving the deposit made by me and guaranteed by them.

" I also certify by this letter that I release the contractors represented by you from all ulterior liability as to the obligation, from the moment in which the contract for the loan being rescinded the sixty-four thousand dollars in gold of the deposit have been recovered by me ; for which purpose all the contractors should provide me in due course with special powers of attorney in that regard, and not doing so they will be liable for the damages that may result by reason of the delay besides that stipulated in the contract of March 27th, 1882."

*Eleventh.* A letter from Martinez to Runkle, dated April 19th, 1884, in which Martinez writes:

"The postponement and delays in sending the powers to Mr. Mestre have created new difficulties which will surely cause great delays, and more still, a danger, because if the municipality should change their mind the deposit would be in peril to be lost. Had I received the powers in time there would not be such risk at present.

"Should the deposit be forfeited I would have to blame the postponers of the powers for the troubles and difficulties that may arise."

*Twelfth.* A telegram from Martinez to Runkle and Lyles, dated March 27th, 1884, urging the forwarding of the powers of attorney. *Thirteenth.* A telegram, dated July 18th, 1884, from Mestre and Martinez to Olcott, asking that a more ample power of attorney than the powers of March 6th and June 26th, to cancel the contract of loan, accept the return of the deposit and give the municipality of Havana a general release, be sent by "to-morrow's steamer." *Fourteenth.* A telegram, dated July 22d, 1884, from Mestre and Martinez to Olcott, asking that power of attorney requested by telegram of July 18th be sent by the first steamer. *Fifteenth.* A telegram from Mestre and Martinez to Olcott, dated July 23d, 1884, asking if the power of attorney is coming.

The defendants prove by Mr. Olcott that, in order to induce Mr. Gilson to sign the power of attorney made by him in July, 1884, Mr. Runkle paid him $10,000.

The defendants then rested, and requested the court to instruct the jury to return a verdict in their favor. This request was refused, and upon its refusal the defendants have assigned error.

The trial judge, among other things, instructed the jury that if they should find that the plaintiff did procure the contract or award of loan from the city of Havana, intended in pursuance of the agreement of November 2d, 1881, with Mr. Runkle, and that such contract was accepted by Mr. Runkle as performance of the agreement between him and

Martinez, then, although the contract was afterwards re-scinded by Runkle and his associates, in connection with Martinez, Martinez should recover what his services in the procuration of the contract were reasonably worth without reference to the $175,000 agreed to be paid to him for pro-curing the contract.

Acting under this instruction, the jury returned a verdict in favor of the plaintiff for $17,500.

Both parties assign error upon the instruction.

For Martinez, *Robert L. Lawrence* and *Henry S. Harris.*

For the administrators of Runkle, *Hamilton Wallis, William D. Edwards* and *Richard V. Lindabury.*

The opinion of the court was delivered by

THE CHANCELLOR. That which was declared upon in this case was an express contract for the performance of certain services at a specified price. The plaintiff's claim is that he performed the contract upon his part and is entitled to the compensation stipulated for. The declaration does not pretend that there is any claim upon implied contract for which *quantum meruit* will lie. The issue in that behalf was first suggested in the court's charge to the jury. It was not in the case made by the pleadings, nor was it adverted to or discussed by counsel during the trial. Therefore, we consider that the court erred in submitting it to the jury.

Both parties having assigned error upon this part of the charge of the court, the question whether the declaration may be amended now is not presented. Nor is it necessary to express an opinion as to the correctness of the legal proposition which that portion of the charge declares, for we think that reversal of the judgment below must rest, also, on error which goes to the merits of the case and finally disposes of it.

By the question raised by the defendants' request to the court to instruct the jury to find for the defendants, the entire proofs are opened for review. With the exception of

uncontroverted testimony by two witnesses, those proofs consist entirely of documents, upon the interpretation of which the decision of the case depends. Those documents show that the plaintiff opened negotiations with the authorities of Havana not to secure merely a contract for the erection of the water works, but a contract to lend the city of Havana $5,600,000, out of which sum $2,200,000 was to be applied to the construction of those works. His offer to the city was to take this contract in behalf of Mr. Maddison, of London, and Messrs. Gilson, Runkle and Lyles, of New York, it having been previously understood between those parties that the contract should be severed when obtained, so that Mr. Maddison would furnish the loan and Messrs. Gilson, Runkle and Lyles would erect the water works. The contract was awarded to the parties thus represented, and almost immediately thereafter an agreement severing it was made, by which Mr. Maddison became bound to furnish the loan and the remaining contractors became bound to build the water works. By the recitals of an agreement subsequently entered into between Messrs. Martinez and Gilson, in November, 1882, seven or eight months after the severance, it appears that Mr. Maddison transferred his interest in the contract with the city of Havana to Mr. Gilson, who undertook to supply the loan, and by that agreement and another agreement of the same date, between the same parties, it appears that Mr. Martinez became the financial agent of Mr. Gilson, at Cuba, and interested with him in the prospective profits in that portion of the contract. Ten months later, the letter from Mr. Martinez to Mr. Gordon shows the loan had not yet been raised, and Mr. Martinez was intent upon a scheme devised by him to quiet the impatience of the authorities at Havana. Thus it appears that Mr. Martinez was concerned as a contractor for the procuration of the loan, without which the contract with the city—an entirety as to the city—could not be performed. Its production was the precedent step in the performance, and Mr. Gilson was bound to Messrs. Runkle and Lyles, as the assignee of Mr. Maddison, to take that step,

and, in interest with him, Mr. Martinez was under at least a moral obligation to produce the loan. This being the situation six months after writing to Gordon, Mr. Martinez wrote to Mr. Lyles, despairing of ability to carry out the contract and seeking from Messrs. Runkle, Lyles and Gilson their authority to cancel it. He evidently had difficulty in moving Mr. Gilson, for as to him he wrote: " He must know by this time that there is no hope to save the business," and urged that Mr. Runkle's influence be used with Mr. Gilson to obtain his consent to the desired cancellation. A few days later he wrote to Mr. Olcott, then the attorney of Mr. Runkle, in New York, and represented that if immediate authority be given him, Martinez, to rescind the contract with Havana, he would be able to save the $64,000 he had deposited when he made the proposal for the contract, the return of which money Messrs. Runkle, Lyles and Gilson had guaranteed him, and threatened that, as he had done all he could to avoid damages and claims, if he could not have the authority in time he would enforce his *rights.* Then he referred to the power of attorney of March 6th, 1884, which Messrs. Runkle and Lyles had forwarded to Mr. Mestre, the partner of Mr. Olcott in Cuba, and stated that Mr. Mestre had asked him for a letter which should declare that he did not seek the rescission in order that he might negotiate for his own advantage, and that he released Messrs. Runkle and Lyles from all liability " *therein,*" which he did not hesitate to tell Mr. Mestre.

It is difficult to understand, from this letter alone, precisely what Mr. Martinez meant by the word " *therein.*" In the connection in which it is used, it grammatically refers to the rescission spoken of. We are aided, however, in the interpretation of its meaning by the letter which Mr. Martinez wrote to Mr. Mestre on the same day. In that letter he said that, in securing the rescission, he had no purpose to carry out, and no rights to utilize, to the injury of Messrs. Runkle and Lyles, and was moved by no desire but to save the $64,000 deposit, and certified by the letter that he released Messrs.

Runkle and Lyles "*from all ulterior liability as to the obligation*" from the moment when, the contract of loan being rescinded, the $64,000 deposit should be recovered by him.

The word "*obligation,*" used in this letter, is Mr. Olcott's translation of the Spanish word "*fianza,*" which appears to be a generic word, sufficiently comprehensive to designate general obligation as well as restricted liability under a single instrument. This indefiniteness of meaning has led to the contention that the agreement of guarantee of the return of the $64,000 was intended. But it is deemed that, in the letter considered, the word was used in its broad sense, for, as the proposed lease was to become operative only when the contract of loan with the city of Havana should be rescinded and the $64,000 should be returned to Mr. Martinez, the guarantee would then, by its own terms, be at an end. That which was guaranteed would be accomplished, and the possible future existence of the $25,000, which the agreement of guarantee assigned from moneys to be thereafter received for the construction of the water works, would be precluded. Under the agreement of guarantee, then, there was no liability to be apprehended after the repayment of the $64,000. Besides, at the beginning of the letter, Mr. Martinez states its purpose to be to satisfy Messrs. Runkle and Lyles concerning the rescission of the contract of loan, and proceeds to declare that the rescission is not to open the way for further negotiations in his own behalf or to enable him to utilize any rights, and follows that declaration by a promised release from ulterior liability as to the obligation, evidently meaning that which he indicated 'by the word "*therein,*" in his letter of the same date, to Mr. Olcott. The reference was to the whole scheme, in which Messrs. Martinez, Runkle, Lyles and Gilson had become involved. We think it was an assurance of the good faith of Martinez in his representation that it was impossible to procure the loan, coupled with an offered acquittance of Messrs. Runkle and Lyles from every liability to him which might outlive the desired rescission of the contract and repayment of the $64,000. We consider that the

proofs fully justify the conclusion that Messrs. Runkle and Lyles so interpreted it, and that, in reliance upon the assurance it gave and in acceptance of the acquittance it offered, they facilitated the rescission by sending an additional power of attorney, amplifying former powers, and Mr. Runkle expended $10,000 of his own moneys to secure a satisfactory power of attorney, to the same effect, from Mr. Gilson, and that, by these means, the rescission was accomplished and Mr. Martinez was repaid his $64,000.

It is deemed that thus the elements of a complete estoppel clearly appear, which preclude the plaintiff's recovery in this suit.

We think that the judge erred in refusing to instruct the jury to find for the defendants.

The judgment below will be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Depue, Dixon, Garrison, Lippincott, Magie, Reed, Van Syckel, Bogert, Brown, Sims, Smith—13.